GARY S. ROSE #83744
FLYNN, ROSE & PERKINS
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399-4566
gsroselaw@hotmail.com

Attorneys for Plaintiff
ANZELLA JONES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANZELLA JONES,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>    Defendants. | Case No.  C08-00458 JL<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY<br>(Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing) |

Plaintiff alleges:

1.  Prior to October 17, 2006, Plaintiff Anzella Jones, and her husband Corky Jones, purchased homeowners insurance from Defendant Allstate Insurance Company, covering the real and personal property at 1238 Linfield Lane, in Hayward, Alameda County, California.  Plaintiff is informed and believes that relevant portions of said policy are attached hereto and incorporated herein as **Exhibit 1**.

2.  Plaintiff is informed and believes, and on such information and belief alleges that Allstate Insurance Company (hereinafter "Allstate") is in a corporation duly licensed to sell insurance in the State of California, within the above-captioned judicial district, and that said defendant is domiciled and maintains its principal place of business in Illinois.

3.  On or about October 17, 2006, the Linfield Lane home and its contents were

COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY
Page 1

substantially damaged by fire.

4.   Venue is proper, as the Defendant is doing business within the above-captioned judicial district, as the Plaintiff resides in said district, and the insured property is located within the above judicial district.

5.   This Court has jurisdiction under 28 U.S.C. §1332, as a controversy exists between citizens of different states, where the issues in controversy exceed $75,000.00.

6.   Following the fire described above, Plaintiff promptly reported the claim.

7.   Allstate subsequently denied the claim on June 26, 2007, on the basis that Plaintiff's spouse, Corky Jones, had allegedly started the fire, a contention denied by Mr. Jones.

8.   Plaintiff retained counsel, who advised Allstate that the alleged conduct of Mr. Jones could not be imputed to Plaintiff under California Insurance Code §2071, and relevant case authority, and further, that Allstate was misstating the law in relying upon Insurance Code §332 to support its position.  Allstate disputed these contentions, and maintained that its policy language permitted Allstate to deny the entire claim, if either spouse had concealed or misrepresented a material fact.

9.   Allstate subsequently reopened the Plaintiff's claim and put her through a second contentious and intrusive Examination Under Oath.  Currently, Allstate's reinvestigation into the claim is pending.

10.   Plaintiff requested that a *complete* copy of her policy be delivered within 30 days, as required by Insurance Code §2071, as hers had been misplaced or destroyed in the fire.  After multiple requests, more than 60 days later, Allstate delivered to her only a copy of the standard "AP-2" policy form, which provided as follows, "we do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstances."

11.   Plaintiff learned that on or before July 21, 2004, Allstate had issued a separate amendment to her policy, number AL1862-1, to conform with the statutory requirements of Insurance Code §2071, which provides, in part, that "the entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or the interests of the insured

COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY
Page 2

therein, or in case of any fraud or false swearing by the insured relating thereto." (emphasis added). This language has been interpreted both by California and other state courts as providing that the conduct of one marital spouse cannot be imputed to the other, and that the conduct of each must be analyzed independently. (Watts v. Farmers Insurance Exchange (2002) 98 Cal.App.4th 1246, 1261.) Allstate's amendment expressly provided that where the statutory language served to liberalize coverage, it would control over provisions of Allstate's standard fire policy. (Id.)

12. Nonetheless, Allstate falsely represented to Plaintiff, and continued to misrepresent to her, the status of its policy and the law by insisting it could deny her claim based on the conduct of her spouse. Plaintiff, in this action, seeks compensation for all her additional living expenses, separate property, and her one-half interest in community property, lost or damaged in the subject fire.

13. As a result of the denial of her claim, Plaintiff suffered damage to her credit rating, has incurred substantial attorney's fees, and has her home in foreclosure.

14. Plaintiff has complied with the terms and conditions imposed upon her by the policy identified herein. As a result of Allstate's unfair conduct, Plaintiff was required to retain the services of legal counsel, and seeks reasonable fees under Brandt vs. Superior Court.

15. In conscious and willful disregard of its obligations and representations to Plaintiff, Allstate failed to properly investigate her claim, and effectuate a prompt, fair and equitable settlement of this claim, notwithstanding that liability for said claim is reasonably clear.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

16. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 15, inclusive, of this Complaint.

17. Defendant, by denying Plaintiff's claim, has breached said insurance contract.

18. As a direct and proximate result of the breach of contract by said Defendant, Plaintiff has been damaged in a sum representing benefits due her, plus interest thereon, in an amount in excess of $100,000.00.

COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY
Page 3

19.     As a further direct and proximate result of the breach of contract by Defendant, Plaintiff has suffered and will continue to suffer consequential damages in an amount to be shown according to proof at trial.

## SECOND CAUSE OF ACTION
### (Breach of the Duty of Good Faith and Fair Dealing)

20.     Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 19, inclusive, of this Complaint.

21.     In committing the acts and omissions described in this Complaint, Allstate acted unreasonably, thereby breaching the duty of good faith and fair dealing owed to Plaintiff. Plaintiff contends that Allstate fraudulently misrepresented the terms of its policy and contended that it had a right to deny Plaintiff's claim based on the conduct of her husband.  It failed to thoroughly investigate her claim, failed to seek out information which would support her claim for benefits, and in other respects breached its duty of good faith and fair dealing.

22.     As a direct and proximate result of the aforementioned wrongful conduct, Plaintiff has been deprived of timely payment of the sums due her, and has experienced anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, causing Plaintiff to incur both general and special damages, in an amount to be proved at trial, but in all events, greater than $200,000.00.

23.     Plaintiff is informed and believes that in denying the benefits due her, Defendant acted fraudulently in misrepresenting the terms of its policy and insisting that her claim could be denied based on the alleged conduct of a spouse.  Allstate engaged in this conduct with a conscious disregard of Plaintiff's rights, and with knowledge of the harmful consequences to her of an improper denial.  Plaintiff therefore seeks exemplary damages in an amount appropriate to deter Allstate from such conduct in the future.

## THIRD CAUSE OF ACTION
### (Unfair Business Practices)

24.     Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 23, inclusive, of this Complaint.

25.     Plaintiff is informed and believes that Allstate has engaged in an unfair business practice of disregarding prevailing California law, and the amended terms of its own homeowners policies, by imputing the conduct of spouses, one to the other, and in failing to independently and severally analyze the conduct of joint insureds in cases where there is a suspicion of arson or false swearing regarding material facts, made with the intention of misleading an insurer.

26.     Plaintiff is a member of the class intended to be benefited by the provisions of Insurance Code §2071, which provides for an independent analysis of each spouse's liability in such situations, and Business and Professions Code §17200, et seq., which provides remedies to enjoin and order restitution for unfair business practices.  Plaintiff has been harmed by the practices described above.

27.     Plaintiff is informed and believes that Allstate has systematically engaged in such unfair practices, which constitutes a breach of statutory duty as well as acts of fraud and bad faith with regard to insureds in addition to herself, and that Allstate realizes a competitive advantage compared to other insurers who lawfully follow the mandates of Insurance Code §2071 as interpreted by California courts.

28.     Plaintiff therefore seeks an injunction banning Allstate from the practice of imputing conduct among joint insureds, an order that Allstate to severally analyze the interests of insureds where there are suspicions of arson or fraud, and that Allstate be ordered to reopen claims handled by its special investigation units and other units, which have been denied benefits to joint insureds, over the past three years or for such other periods the Court may determine be just and proper.

WHEREFORE, Plaintiff prays judgment against the Defendant as follows:

(1)     For the amount of benefits due pursuant to the contract of insurance, according to proof at trial;

(2)     For interest on the payments not made from after the dates on which such payments should have been made;

(3)     For general damages according to proof;

(4)     For special damages according to proof;

COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY
Page 5

(5)    For injunctive relief;

(6)    For prejudgment interest on the damages alleged herein as allowed by law;

(7)    For attorney's fees and costs of suit incurred herein; and

(8)    For such other and further relief as the Court may deem just and proper.

DATE: January 18, 2008                FLYNN, ROSE & PERKINS


By    /s/
                                      GARY S. ROSE
                                      Attorney for Plaintiff
                                      ANZELLA JONES


## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Anzella Jones hereby demands a jury trial in the above-entitled action.

DATE: January 18, 2008                FLYNN, ROSE & PERKINS

By    /s/
                                      GARY S. ROSE
                                      Attorney for Plaintiff
                                      ANZELLA JONES

COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY
Page 6

Anzella Jones v. Allstate Insurance Company
## Case No. C08-00458 JL
United States District Court, Northern District of
California, San Francisco

## Exhibit 1 to Complaint

Allstate Insurance Company

### RENEWAL

# Deluxe Homeowners
# Policy Declarations

## Summary

**NAMED INSURED(S)**
Corky D Jones
1238 Linfield Lane
Hayward CA 94545-3135

**YOUR ALLSTATE AGENT IS:**
Cornel V Jacks
801 Lincoln Way #A
San Francisco CA 94122

**CONTACT YOUR AGENT AT:**
(415) 665-7701

**POLICY NUMBER**
9 04 810671 07/21

**POLICY PERIOD**
Begins on July 21, 2006
at 12:01 a.m. Pacific Time
and continues until cancelled

**PREMIUM PERIOD**
July 21, 2006  to July 21, 2007
at 12:01 a.m. Pacific Time

**LOCATION OF PROPERTY INSURED**
1238 Linfield Lane, Hayward, CA 94545-3135

**MORTGAGEE**
- WORLD SAVINGS
  &/OR ASSIGNEES
  P O Box 7512

ITS SUCCESSORS

Springfield OH 45501-7512

Loan # 0041387747

## Total Premium for the Premium Period    (Your bill will be mailed separately)

|                              |              |
|------------------------------|--------------|
|                              | $1,237.00    |
| Premium for Property Insured | $1,237.00    |
| TOTAL                        |              |

PRUP  *010000406070653173010802*

Information as of
July 6, 2006

Page 1

CA0700/8II

# Allstate Insurance Company

Policy Number: **9 04 810671 07/21**        Your Agent:   **Cornel V Jacks  (415) 665-7701**
For Premium Period Beginning: **July 21, 2004**

## Your Policy Documents

Your Homeowners policy consists of this Policy Declarations and the documents listed below. Please keep these together.

- Deluxe Homeowners Policy form AP2
- Domestic Workers' Comp & Emp Liability AP1127
- Bldg. Struct. Reimb. Ext. Limits End. form AP445
- Deluxe, Deluxe Plus Amend End. form AP1290
- CA Deluxe Amendatory Endorsement form AP2237

- California Amendatory Endorsement form AP29-3
- Amendment of Policy Provisions form AP425
- Lender's Loss Payable Endorsement form AU319
- California Std Fire Policy Prov. End form AP1862-1

## Important Payment and Coverage Information

Please note: This is not a request for payment.  Your bill will be mailed separately.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by two of its officers at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate**.

*Edward M. Liddy*
Edward M. Liddy
President

*Robert W. Pike*
Robert W. Pike
Secretary

Information as of
May 28, 2004

CA070RBD

*Cornel V Jacks*
*801 Lincoln Way #A*
*San Francisco CA 94122*

**Your Quick Insurance Check**

✓ Verify the information listed in the Policy Declarations.

✓ Please call if you have any questions.

✓ File this package safely away.

✓ Watch the mail for your bill; it will arrive soon.

Corky D Jones
1238 Linfield Lane
Hayward CA 94545-3135

**A new policy period is about to begin. Here are your renewal offer materials.**

Nearly a year has passed since you became an Allstate Insurance Company property insurance customer, and I'm pleased to offer you the opportunity to continue your Deluxe Homeowners policy for another twelve months. We appreciate your business and want to remind you that you're backed by an experienced Allstate team that's ready to help you protect your family and your financial security.

. . also like to thank you again for choosing Allstate for your auto and homeowners insurance. Quality insurance coverage for your most valuable assets is a cornerstone of long-term financial security.

Plus, as you know, you save twice by choosing Allstate for your auto and homeowners insurance needs, with a discount on both policies.

**Please review your coverage information.**
You'll find your Home and Auto Discount listed on the enclosed Policy Declarations, along with your coverages, limits, deductibles, premiums, and any other discounts you may have. As you read this information, it would be a good idea to consider whether anything needs updating. For example, have you made new purchases or home improvements during the past year? I'd be happy to help you make sure your insurance is keeping up with any changes in your life.

*(over)*

PROP *510000404052853077701501*

0000009048106?1 070    010    CA

Information as of
May 29, 2004

RP251

# Allstate Insurance Company

Policy Number: **9 04 810671 07/21**    Your Agent: **Cornel V Jacks (415) 665-7701**
For Premium Period Beginning: **July 21, 2004**

# Important Notice

## DWELLING PROFILE

Allstate has determined that the *estimated* cost to replace your home is : $159,067.

The enclosed Policy Declarations shows the limit of liability applicable to Coverage A—Dwelling Protection of your homeowners insurance policy. That limit of liability must be at least equal to the estimated replacement cost of your home as shown above.

Many factors can affect the cost to replace your home, including its size, type and any unique features. Allstate's estimate of the replacement cost of your home is based, in part, on the following home characteristic information, which includes information you provided to us.

DWELLING STYLE: Ranch, 1.0 Story(s), 1 Family(s), Built 1956, 1285 sq. ft. Living Area

CONSTRUCTION: 100% Crawlspace

ADDITIONS: 1 Standard Kitchen(s), 2 Standard Full Bath(s)

1 Standard Masonry Fireplaces, 1 Carport(s) Two Car

DETAIL: Exterior Wall - Stucco(100%), Roof - Asphalt/Fiberglass Shingles(100%)

Int Walls - Partitions - Sheetrock(100%), Wall Coverings - Paint(100%)

Ceilings - Textured Sheetrock(100%), Flooring - Hardwood( 20%)

Flooring - Average Carpet/36 oz. Nylon( 75%), Flooring - Average Tile( 5%)

Heat&Air Cond. - Gas Heat (hot air)(100%)

**Renewing your policy is easy.**
Here's what will happen and what you'll need to do before the beginning of your next policy period.

- Please check your Policy Declarations to make sure it accurately reflects your information and the choices you've made. Get in touch with me right away if there's anything you'd like to change.
- Unless a mortgagee company or lienholder pays your insurance premium for you, keep an eye out for your bill, which will include information on payment options.
- If you're paying your premium using the Allstate Easy Pay Plan, you will not receive a bill. Instead, we'll send you a statement detailing your withdrawal schedule for the policy period.
- Carefully read all enclosed materials and store these documents with your other important papers. Keep in mind that the policy documents included may change each time you receive a renewal offer—please read them to make sure you know about any important information or changes related to your insurance.

**We're here to help you.**
Feel free to call me at (415) 665-7701. Or take advantage of the online services at *allstate.com,* where you can view your policy information and even make a payment by registering at the Allstate Customer Care Center. And for 24-hour-a-day, 7-day-a-week service and information, just call 1-800-ALLSTATE® (1-800-255-7828).

Remember, insurance is not only protection for today. It helps pave the way to a financially secure future.

I'm glad you're with us.

Cornel V Jacks
Your Allstate Agent

# Allstate Insurance Company

## RENEWAL

# Deluxe Homeowners Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)** | **YOUR ALLSTATE AGENT IS:** | **CONTACT YOUR AGENT AT:** |
| Corky D Jones<br>1238 Linfield Lane<br>Hayward CA 94545-3135 | Cornel V Jacks<br>801 Lincoln Way #A<br>San Francisco CA 94122 | (415) 665-7701 |

| | | |
|---|---|---|
| **POLICY NUMBER** | **POLICY PERIOD** | **PREMIUM PERIOD** |
| 9 04 810671 07/21 | Begins on July 21, 2004<br>at 12:01 a.m. Pacific Time<br>and continues until cancelled | July 21, 2004 to July 21, 2005<br>at 12:01 a.m. Pacific Time |

**LOCATION OF PROPERTY INSURED**
1238 Linfield Lane, Hayward, CA 94545-3135

**MORTGAGEE(S)**    (Listed in order of precedence)

- AURORA LOAN SERVICES INC        ITS SUCCESSORS
  &/OR ASSIGNS
  P O Box 10422        Van Nuys CA 91410-0422        *Loan # 0015789282*
- WELLS FARGO BANK NA ITS SUCCESSORS AND/OR ASSIGNS
  4455 Arrowwest Drive    Colorado Springs CO 80907-3445        *Loan # 1074153*

## *Total Premium for the Premium Period*    *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $924.00 |
| **TOTAL** | **$924.00** |

PROP *51000040405285307770150 2*



Information as of
May 28, 2004

**Page 1**

CA070RBD

# Allstate Insurance Company

Policy Number:  **9 04 810671 07/21**      Your Agent:   **Cornel V Jacks  (415) 665-7701**
For Premium Period Beginning:  **July 21, 2004**

## POLICY COVERAGES AND LIMITS OF LIABILITY

| COVERAGE AND APPLICABLE DEDUCTIBLES<br>(See Policy for Applicable Terms, Conditions and Exclusions) | LIMITS OF LIABILITY | |
|---|---|---|
| Dwelling Protection - with Building Structure Reimbursement Extended Limits<br>• $500   All Peril Deductible Applies | $215,000 | |
| Other Structures Protection<br>• $500   All Peril Deductible Applies | $21,500 | |
| Personal Property Protection - Reimbursement Provision<br>• $500   All Peril Deductible Applies | $150,500 | |
| Additional Living Expense | Up To 12 Months | |
| Family Liability Protection | $300,000 | each occurrence |
| Guest Medical Protection | $1,000 | each person |
| Workers' Compensation and Employers' Liability<br>Coverage for Residence Employees | Statutory/See Form | |

### THIS POLICY DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE.

This policy does not cover earth movement including earthquake

You have elected not to purchase a CEA earthquake policy

### DISCOUNTS   Your premium reflects the following discounts on applicable coverage(s):

| Protective Device | 5 % | Claim Free | 15 % |
|---|---|---|---|
| Home and Auto | 20 % | | |

### RATING INFORMATION

The dwelling is of Frame construction and is occupied by   1 family

**Allstate Insurance Company**

For Premium Period Beginning: July 21, 2004

A "Help Sheet," that explains many of the terms used above to describe the characteristics of your home, is available from your Allstate agent. If you would like to obtain a "Help Sheet," simply contact your Allstate agent, who will be happy to send one to you.

It's important to keep in mind that the replacement cost shown above is only an estimate based on construction cost data for a point in time. The *actual* amount it will cost to replace your home cannot be known until after a loss has occurred. The decision regarding the limit applicable to your Coverage A—Dwelling Protection is your decision to make, as long as you purchase at least the minimum limit Allstate specifies and meet certain other requirements.

If the information about your home shown above requires any change or if you have any questions or concerns regarding the information, the estimated cost to replace your home or the amount of your Coverage A—Dwelling Protection limit, please contact your Allstate agent. Your Allstate agent will be happy to discuss this important matter with you.

<u>SPECIAL NOTE TO ALLSTATE CUSTOMERS RENEWING THEIR HOMEOWNERS INSURANCE POLICY:</u>  The estimated replacement cost for your home may have changed since the last time we communicated this information to you. That change could be due to several factors, including, for example, changes in the cost of building materials and labor rates.

X7119

PROP *5100004040520530/7701504*

Information as of
May 29, 2004

**Page 5**

CA070RBD

Allstate Insurance Company

Policy Number: A 81067 07 21    Your Agent: Calvin Oakes 877701
For Premium Period Beginning: July 21, 2004

# Important Notice
## *Our Privacy Policy*

**California Privacy Notice**

At Allstate, we value you as a customer. We also share your concerns about privacy. We are sending this notice to explain how we treat personal information ("customer information") that is not public. This is information that we obtain from you or other sources when we provide you with products and services.

We want you to know that we respect your privacy; and we protect your information.

- We do not sell customer information.
- We do not share your information with persons, companies, or organizations outside of Allstate that would use that information to contact you about their products and services.
- We expect persons or organizations that provide services on our behalf to keep your information confidential. We also expect those persons or organizations to use your information only to provide the services we've asked them to perform.
- We convey to our employees about the need to protect your information. We have established safeguards (these are physical, electronic and procedural) to protect this information.

Below are answers to questions you might have about privacy. You may be wondering. . .

**What do we do with your information?**

Allstate does not sell your customer or medical information to anyone. We do not share this information with companies or organizations outside of Allstate that would use it to contact you about their products and services. If that practice were to change, we would offer you the means to opt out of this type of information sharing. Also, we would obtain your consent before sharing your medical information for marketing purposes.

Your agent or broker may use your information to help you with your insurance needs. We may also communicate with you about products, features, and options in which you have expressed an interest. Without your consent, we may provide your information to persons or organizations in and out of Allstate. This would be done as permitted or required by law. We may do this to:

* Fulfill a transaction you have requested.
* Service your policy.
* Market our products to you.
* Investigate or handle claims.
* Detect or prevent fraud.
* Participate in insurance support organizations. The information in a report prepared by an insurance organization may be retained by that organization and distributed to other persons.
* Comply with lawful requests from regulatory and law enforcement authorities.

These persons or organizations may include:
* Our affiliated companies.
* Companies that perform services, such as marketing, on our behalf.
* Other financial institutions with which we have an agreement for the sale of financial products.

Page 1

PROP *510000404052853077701505*


Policy Number:  **9 04 810671 07/21**    Your Agent:  **Cornel V Jacks (415) 665-7701**
For Premium Period Beginning:  **July 21, 2004**

* Other insurance companies. This would be done so they could perform their role in **an insurance**
transaction involving you.
* Independent claims adjusters.
* A business or businesses that conduct actuarial or research studies.
* Persons requesting information pursuant to a subpoena or court order.
* Repair shops and recommended claims vendors.
* Your agent or broker.

### What kind of customer information do we have, and where did we get it?

Much of the information that we have about you comes from you. When you perform certain
transactions, you may give us information such as your name, address, and Social Security Number.
These transactions include when you submit an application for insurance, submit a request for
insurance, submit a request for products and services we offer, or submit a request for an insurance
quote.  We keep information about the types of services you purchase from us and our affiliates.
Examples of this include premiums, account balances, and payment history. We may collect
information from outside sources such as consumer reporting agencies and health care providers.  The
information we collect may include the following:

- Loss information reports.
- Motor vehicle reports.
- Credit reports.
- Medical information.

### How do we protect your customer information?

We expect any company with whom we share your information to use it only to provide the service we have
asked them to perform. Information about you is also available within Allstate. It is available to those people who
may need to use it to fulfill and service the needs of our customers. We communicate the need to protect your
information to all employees and agents. We especially communicate this need to people who have access to it.
Plus, we have established physical, electronic, and procedural safeguards to protect your information.

Note that if your relationship with us ends, your information will remain protected. This protection will be
provided according to our privacy practices outlined in this Important Notice.

### How can you find out what information we have about you?

You may request to see, or obtain by mail, the information about you in our records. If you believe that our
information is incomplete or inaccurate, you may request that we correct, add to, or delete from the disputed
information.   To fulfill your request, we may make arrangements to copy and disclose your information to you on
our behalf.  This may be done with an insurance support organization or a consumer reporting agency.  You may
also request a more complete description of the entities to which we disclose your information, or the conditions
that might warrant such disclosures. Please send any of the requests listed above in writing to:

Allstate Insurance Company
Customer Privacy Inquiries
P.O. Box 11904
Roanoke, VA 24022.

**Allstate Insurance Company**

Policy Number: 811067 1072    Your Agent:    Corland Jacks 041 3701

For Premium Period Beginning:  **July 21, 2004**

**If you are an Internet user. . .**

Our web site, allstate.com, provides information about us, our products, and the agencies and brokers that represent us. You may also perform some transactions on the web site. When accessing allstate.com, be sure to read the Privacy Statement that appears there.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the web site. This includes, for example, information regarding:

1)   our use of online collecting devices known as "cookies";
2)   how we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
3)   who should use our web site;
4)   the security of information over the Internet;
5)   links and co-branded sites.

We hope you have found this notice helpful. If you have any questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate CIC at 1-800-Allstate®.

X67376

This notice is being provided on behalf of the following companies:

Allstate Indemnity Company
Allstate Motor Club, Inc.
Allstate Property and Casualty Insurance Company

Allstate Insurance Company
Roadway Protection Auto Club, Inc.
Forestview Mortgage Insurance Company



PROP *5100004040528530777701506*

**Allstate Insurance Company**

Policy Number: ɔ 04 810671 07/21    Your Agent:    Cornel V Jacks (41ᴄ, ᴄ5-7701
For Premium Period Beginning: July 21, 2004

# Important Notice

## Important Information About Your Allstate Policy

The enclosed Policy Declarations lists important information about your policy, such as your address, the location of the insured property, the coverages and coverage limits you've chosen, and mortgagee information, if applicable. Your Policy Declarations also lists any discounts and surcharges applied to your policy.

Because much of the information found on your Policy Declarations is used to help us determine your premium, please be sure to review your Policy Declarations carefully each time you receive one. You may want to add coverage, delete coverage or change your coverage limits — or you may want to update coverage on valuable personal items, such as jewelry or artwork.

Another thing to keep in mind is that you may now qualify for discounts that you previously were not eligible to receive. For instance, in many states, Allstate offers discounts for:

- policyholders who are 55 years of age or older and who are no longer working;
- homes that contain smoke detectors and other protective devices; and
- policyholders who insure both their homes and autos with Allstate.

Please contact your Allstate representative for additional information about discount qualifications, as well as other discounts that may be available.

### Making changes to your policy
If you need to make a change to any of the information listed on your Policy Declarations, please notify your Allstate representative of the change as soon as possible. With a few exceptions, **any changes will be effective as of the date you notify us.**

If you have any questions about this notice, or if you need to update any of the information listed on the enclosed Policy Declarations, please contact your Allstate agent or our Customer Information Center at 1-800-ALLSTATE (1-800-255-7828).

X67106

**Allstate Insurance Company**

Policy Number: 9 04 810671 07/21      Your Agent:    Cornel V Jacks (415) 665-7701
For Premium Period Beginning: July 21, 2004

# Important Notice

## Information about Flood Insurance

### Protection against flood damage

Most homeowners, renters and commercial insurance policies do not provide coverage for damage caused by floods. In fact, protection against floods is generally available only through a separate policy.

That' s why Allstate is a participant in the National Flood Insurance Program and offers standard flood insurance policies*. A flood policy can help complete the insurance protection for your property and help protect your financial well-being.

### You may need it more than you think

Approximately 90% of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25% of all flood losses occur in low to moderate risk areas.

And because flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy), selecting Allstate gives you the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more.

### It' s affordable

The federal government sets the rates for flood insurance, so there' s typically no difference in rates from policy to policy -- you can generally switch to a flood insurance policy administered by Allstate for the same amount of premium. If you choose Allstate, you can have the service, convenience and comfort you' ve come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at *allstate.com*.

*Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

Page 1

PROP *510000404052855077701507*

**Allstate Insurance Company**

Policy Number:  _ J4 810671 07/21      Your Agent:    Cornel V Jacks (4. .65-7701
For Premium Period Beginning:  July 21, 2004

## *Information about Scheduled Personal Property Coverage*

### *Protection for your valuables*
Allstate offers Scheduled Personal Property (SPP) coverage to help protect your valuables.

These items can include jewelry (such as engagement and wedding rings), fine art and musical instruments. Sports equipment, such as golf clubs, can also be covered by SPP.

In addition, SPP can cover valuables stored outside of your home in a safe deposit box or bank. And if you work from home and use computer or audio-visual equipment for business purposes, SPP can cover these items as well.

### *Already have SPP?*
Even if you currently have SPP coverage, it' s a good idea to review your coverage annually. It' s possible that the value of your property has changed or that you have purchased new items that have not been added to your coverage.

### *Affordable coverage*
The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need—the rates are generally a small percentage of the total value of the items you' re insuring. This could mean that your valuables are being protected for only a fraction of the cost.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at *allstate.com.*

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

X67372

**Allstate Insurance Company**

Policy Number:  9 04 810671 07/21      Your Agent:    Cornel V Jacks (415) ᴜᴜᴜ-7701
For Premium Period Beginning:  July 21, 2004

# Important Notice

### Changes Have Been Made To Your Allstate Insurance Policy

The enclosed endorsement includes language now contained in your Allstate insurance policy. Please read the new endorsement carefully along with all other applicable policy information including the enclosed Policy Declarations.

Two provisions are being added to the General section of the policy. Those provisions, which are entitled "What Law Will Apply" and "Where Lawsuits May Be Brought," specify that, subject to the exceptions set forth in the new provisions, claims or disputes in any way related to the policy will be governed by the laws of California and lawsuits in any way related to the policy will be brought, heard and decided in a state or federal court located in California.

In Section I—Your Property, Coverage C—Personal Property Protection, under Limitations On Certain Personal Property, we have introduced a $400 coverage limit for theft of compact discs, while compact discs are away from the residence premises.

In Section III—Optional Protection, under Optional Coverages You May Buy, language found under Coverage BC—Building Codes now indicates this coverage is a separate limit of liability and is the maximum that Allstate will pay for any one loss. Also, coverage only applies to that portion of the dwelling that is damaged due to a covered loss.

If you have any questions regarding this notice or your insurance in general, please do not hesitate to contact your Allstate representative.

XC878

PROP ˙510000404052853077701508˙



**Allstate Insurance Company**

Policy Number:  **9 04 810671 07/21**      Your Agent:      **Cornel V Jacks  (415) o65-7701**
For Premium Period Beginning:  **July 21, 2004**

# Important Notice

## *Information About Your Coverage A — Dwelling Protection Limit*

The enclosed Policy Declarations shows the limit of liability applicable to Coverage A — Dwelling Protection of your homeowners insurance policy. That amount is intended to reflect an *estimated* cost to replace your home in the event of a total loss. Many factors can affect the cost to replace your home, including its size, type and any unique features. Allstate's estimate of the replacement cost of your home is based on information we collected, including information you provided to us.

For this renewal period, the estimated cost to replace your home based on this information is lower than the Coverage A — Dwelling Protection limit of liability shown on the enclosed Policy Declarations. Allstate, however, did not automatically adjust the limit of liability to a new lower limit. Allstate's estimated replacement cost based upon the information collected is just that, only an estimate. The *actual* amount it will cost to replace a home cannot be known until after a loss has occurred. The decision regarding the limit applicable to Coverage A — Dwelling Protection is your decision to make, as long as you purchase at least the minimum limit Allstate specifies and meet certain other requirements. Reducing your Coverage A — Dwelling Protection limit could reduce the premium amount you pay. Because this decision is yours to make, you may also want to consider increasing your coverage limit.

Please note that, if you purchase an earthquake insurance policy, the Coverage A — Dwelling limit under that policy will be the same amount as the Coverage A — Dwelling Protection limit for your homeowners insurance policy. Therefore, any change you decide to make to the Coverage A — Dwelling Protection limit for your homeowners insurance policy will also apply to the Coverage A — Dwelling limit under your earthquake insurance policy.

If you wish to inquire about your current estimated replacement cost or adjusting the Coverage A — Dwelling Protection limit shown on the enclosed Policy Declarations, please contact your agent at your earliest convenience. If you decide to reduce the limit, you must agree in writing to a new amount before any change in the limit can be made.

Thank you for your help in this important matter and as always, if you have any questions, please contact your Allstate agent.

X5786

**Allstate Insurance Company**

Policy Number:  9 04 810671 07/21    Your Agent:   Cornel V Jacks  (415) 665-7701
For Premium Period Beginning:  July 21, 2004

# Important Notice

## *Information About Your Allstate Property Insurance*

Listed below is information concerning policy term extension. In addition, we'd like you to know that Allstate has several property insurance discounts available. Please note that the particular discounts available vary depending on the type of property insurance policy you have. Below is a listing of these discounts, including a brief description of each. (Any discounts you're currently receiving are listed on the enclosed Policy Declarations.)

**Policy Term Extension**
**Under certain circumstances, if we fail to deliver or mail your renewal or nonrenewal notice at least 45 days prior to your policy's expiration date, California law requires us to extend your policy for 45 days from the date the notice is delivered or mailed.**

**Age of Home/Renovated Home Discount** — You may be eligible for a discount on your Homeowners insurance premium if your home is nine years of age or less, or if it has been completely renovated and all of the renovations were completed less than 10 years ago (complete renovation includes the installation of roofing, plumbing, electrical and heating and cooling systems). The amount of the discount ranges between 2 and 25 percent and varies depending on the age of your home and the policy you have.

**Fire Resistive Discount** — A 15 percent discount may be applied to the Homeowners insurance premium for homes of fire resistive or fireproof construction.

**55 and Retired Discount** — We offer a 10 percent discount if one of the named insureds on your policy is age 55 or older, if both the named insured and his or her spouse are not gainfully employed full-time or seeking full-time gainful employment, and if the insured home is your principal place of residence. This discount applies to Homeowners, Condominium Owners and Renters insurance policies.

**Home and Auto Discount** — If you or your spouse are also the named insured on an Allstate Insurance Company or Allstate Indemnity Company auto insurance policy in the state of California, you may be eligible for a 20 percent discount on your Homeowners insurance premium, or a 10 percent discount on your Renters or Condominium Owners insurance premium.

**Protective Device Discount** — We offer a 5 to 15 percent discount for the installation of certain protective devices, such as smoke detectors, fire extinguishers, dead bolt locks, burglar alarms, fire alarms, and complete sprinkler systems. The amount of the discount varies depending on how many and what types of devices are installed in your home. This discount applies to Homeowners, Condominium Owners, and Renters insurance policies. Please note that, for Condominium Owners and Renters insurance policies, a discount is available for buildings with certain 24-hour security service.

**Claim Free Discount** — If you have a homeowners insurance policy from the *Allstate Insurance Company*, you may be eligible for a 15 percent premium discount if you or your spouse has maintained a qualifying property insurance policy for the 12 months prior to your policy effective date and in the last 5 years prior to your policy effective date, there have been no claims of a certain type and dollar amount. If you have a

Page 1

PROP  *510000404052830077701509*



**Allstate Insurance Company**

Policy Numb.    9 04 810671 07/21       Your Agent:    Cornel V Jacks (—..v) 665-7701
For Premium Period Beginning:  July 21, 2004

homeowners insurance policy from the *Allstate Indemnity Company*, you may be eligible for a Claim Free Discount of either 10 percent or 20 percent. You may be eligible for a 10 percent premium discount if, during the three year period prior to your policy effective date, you or your spouse has maintained a qualifying Allstate homeowners insurance policy and there have been no claims of a certain type and dollar amount. You may be eligible for a 20 percent premium discount if, during the five year period prior to your policy effective date, you or your spouse has maintained a qualifying Allstate homeowners insurance policy and there have been no claims of a certain type and dollar amount.

**Home Buyer Discount** — We offer a 4 to 20 percent discount on Homeowners and Condominium Owners insurance policies if the you are the original owner of your house or condominium and the date that the Allstate Homeowners or Condominium Owners policy becomes effective is either in the same month in which the house or condominium was purchased or in the month after the purchase. This discount applies to homes or condominiums purchased after September 25, 2000.

The premium for your property insurance policy is determined based on a variety of factors, including information you have given us. It is important that you notify us if the information upon which your premium is based is incorrect or incomplete, so that we may adjust your premium accordingly.

This notice provides only a general description of the qualifications and conditions for each discount — other qualifications and conditions may apply. For complete details on discount qualifications and conditions, or if you have any other questions about the information in this notice, including whether you may qualify for one or more discounts or whether your premium is accurate, please call your Allstate agent.

X66450

**Allstate Insurance Company**

Policy Number:   4 81067 1 07/21    Your Agent:   Cornel V Jacks (4\ )5-7701
For Premium Period Beginning:  July 21, 2004

# Important Notice

*The Enclosed Amendatory Endorsements Revise Your Policy*

Under the **Cancellation** provision in your policy, the written notice period has changed.  We will provide at least 20 days notice of cancellation.  However, if the reason for cancellation is nonpayment of premium or fraud, we may cancel this policy by giving you at least 10 days notice of cancellation.

Please note that while this Important Notice highlights significant changes being made to your policy, it is not a part of your policy.  For more detailed information about your insurance coverage, please carefully read the enclosed amendatory endorsements along with all other policy information including the enclosed Policy Declarations.

If you have any questions regarding this Notice or your insurance policy in general, please contact your Allstate representative.

XC967

Policy Number: **9 04 810671 07/21**      Your Agent:   **Cornel V Jacks  (415) 665-7701**
For Premium Period Beginning:  **July 21, 2004**

# Important Notice

### *You May Qualify for the Claim Surcharge Waiver*

We'd like to take this opportunity to let you know that we truly appreciate your business and to let you know about a feature of your homeowners policy called the Claim Surcharge Waiver.

We developed the Claim Surcharge Waiver to provide a benefit to long-term customers who have not filed certain types of claims — for example, claims that are greater than $250 — within the most recent five-year period. Generally, a surcharge is applied to claims filed for amounts greater than $250. But if you qualify for this program, no surcharge will be applied to your insurance premium due to the next claim you file under your policy that would otherwise require a surcharge.

For an explanation of all the terms and conditions that apply, please contact your Allstate agent.

Thank you again for your business. If you have any questions about the Claim Surcharge Waiver, or your policy in general, please don't hesitate to call your Allstate agent.

X7163

Policy Number: 9 04 810671 07/21    Your Agent: **Cornel V Jacks** (415) 665-7701
For Premium Period Beginning: **July 21, 2004**

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## California
## Deluxe Homeowners Amendatory Endorsement — AP2237

I.    In the **General** section, the following provisions are added:

**What Law Will Apply**

This policy is issued in accordance with the laws of California and covers property or risks principally located in California. Subject to the following paragraph, the laws of California shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy shall be brought, heard and decided only in a state or federal court located in California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, lawsuits regarding that covered loss to property, or any other covered **occurrence** may also be brought in the judicial district where that covered loss to property, or any other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

II.    In **Section I — Your Property**, under **Coverage C — Personal Property Protection**, **Limitations On Certain Personal Property**, item 15. is added:

Page 1

PROP *510000040052853077701511*



**Allstate Insurance Company**

Policy Number: 9 04 810671 07/21     Your Agent:     Cornel V Jacks (415) 665-7701
For Premium Period Beginning: July 21, 2004

15. $400—Theft of compact discs, while compact discs are away from the **residence premises**. This is the maximum amount **we** will pay for an entire collection.

III. In **Section III—Optional Protection**, under **Optional Coverages You May Buy**, **Coverage BC—Building Codes** is replaced by the following:

1. **Coverage BC**
   **Building Codes**
   **We** will pay up to 10% of the amount of insurance shown on the Policy Declarations under **Section I, Coverage A—Dwelling Protection** to comply with applicable laws regulating the construction, use, or repair of any property or requiring the tearing down of any property after a covered loss to covered **building structures** and when repair or replacement results in increased cost due to the enforcement of these laws.

   The amount of insurance provided by this coverage is a separate limit of liability, and is the maximum **we** will pay for any one loss. Coverage only applies to that portion of the **dwelling** that was damaged due to a covered loss.

All other policy terms and conditions apply.

**Allstate Insurance Company**

Policy Number: ы 04 810671 07/21    Your Agent:    Cornel V Jacks  (415) о65-7701
For Premium Period Beginning:  July 21, 2004

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## California
## Deluxe Plus and Deluxe Homeowners Policy
## Amendatory Endorsement — AP29-3

It is agreed that **your** policy is amended as follows:

I.    The **General** section of **your** policy is revised as follows:

    A.    The **Cancellation** provision is replaced by the following:

        **Cancellation**
        **Your** Right to Cancel:
        **You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

        **Our** Right to Cancel:
        **Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations.  When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 20 days notice before the cancellation takes effect, however, if the reason for cancellation is nonpayment of premium or fraud, we may cancel this policy by giving you at least 10 days notice of cancellation.

        When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
        1.    Non-payment of premium;
        2.    Fraud or material misrepresentation by **you** or **your** representative in obtaining the policy;
        3.    Fraud or material misrepresentation by **you** or **your** representative in pursuing a claim under this policy;
        4.    Grossly negligent acts or omissions by **you** or **your** representative which substantially increase any of the hazards insured against;
        5.    **You** have been convicted of a crime and one of the necessary elements of the crime was an act increasing any hazard insured against;
        6.    Physical changes in the insured property resulting in the property becoming uninsurable; or

Page 1

PROP *5100004040528530/7701512*



# Allstate Insurance Company

Policy Number: 9 04 810671 07/21     Your Agent:   Cornel V Jacks (415) 665-7701
For Premium Period Beginning: July 21, 2004

7. **You** have purchased an earthquake policy from the California Earthquake Authority, and **you** fail to pay a premium surcharge authorized by the California Earthquake Authority that is applicable to that earthquake policy.

If the cancellation is for non-payment of premium, **we** will mail **you** at least 10 days notice. If the cancellation is for any other reason, **we** will mail **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed to be proof of notice. Coverage under this policy will terminate on the date and time stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** don't intend to continue or renew the policy, **we** will mail **you** notice at least 45 days before the end of the premium period. **Our** mailing the notice of non-renewal to **you** will be deemed to be proof of notice.

II.     Under Section I—"Conditions", item 17., "Property Insurance Adjustment", is replaced by the following:

17.     **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment condition applies:

The limit of liability shown on the Policy Declarations for "Coverage A - Dwelling Protection" will be revised at each policy anniversary to reflect the rate of change in the replacement cost of **your dwelling** as identified on the Policy Declarations.

The limit of liability for "Coverage A - Dwelling Protection" for the succeeding premium period will be determined by changing the existing limit in proportion to the changes in the replacement cost of **your dwelling** between the time the existing limit was established and the time the changes were made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for "Coverage A - Dwelling Protection" will result in an adjustment in the limit of liability for "Coverage B - Other Structures Protection" and "Coverage C - Personal Property Protection" in accordance with the **Allstate** manual of Rules and Rates.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

Page 2

**Allstate Insurance Company**

Policy Number:   9 04 810671 07/21        Your Agent:   Cornel V Jacks  (415) 665-7701
For Premium Period Beginning:  July 21, 2004

Allstate has the right to change to another replacement cost condition or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. **This applies only if the change or withdrawal applies to all similar policies issued by Allstate in your** state.

III.   Under Section II—"Family Liability and Guest Medical Protection", item 15. under "Losses We Do Not Cover Under Coverage X" of Coverage X—"Family Liability Protection" is replaced by the following:

15.   **We** do not cover any liability an **insured person** assumes under any contract or agreement. **We** will not cover any contract or agreement in connection with a **business** of an **insured person** or any loss assessments levied against an **insured person** by an association of dwelling owners of which the **insured person** is a member.

Page 3

PROP *5100004040528530/7701513*

**Allstate Insurance Company**

Policy Number:  9 04 810671 07/21      Your Agent:    Cornel V Jacks  (415) 665-7701
For Premium Period Beginning:  July 21, 2004

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## CALIFORNIA STANDARD FIRE POLICY PROVISIONS — AP1862-1

This form contains the provisions of the Standard Fire Policy. Whenever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply.

   **In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations** (or specified in endorsement attached thereto), **Allstate, for the term shown in the Declarations from inception date shown in the Declarations until canceled or expiration** at location of property involved, to an amount not exceeding the limit of liability specified, does insure **the Insured named in the Declarations** and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this
policy, but not elsewhere.

   Assignment of this policy shall not be valid except with the written consent of Allstate.

   This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with any other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

   **Concealment, fraud**

   This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

**Allstate Insurance Company**

Policy Number.    04 810671 07/21    Your Agent:    Cornel V Jacks  (4..., ...65-7701
For Premium Period Beginning:  July 21, 2004

**Uninsurable and excepted property**

This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

**Perils not included**

This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that the fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this company be liable for loss by theft.

**Other insurance**

Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance**

Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 60 consecutive days; or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only.

**Other perils or subjects**

Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions**

The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy or by statute is subject to change.

PROP *51000040405285307770151514*

**Allstate Insurance Company**

Policy Number:   9 04 810671 07/21      Your Agent:    Cornel V Jacks  (415) 665-7701
For Premium Period Beginning:  July 21, 2004

### Waiver provisions

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

### Cancellation of policy

This policy shall be canceled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by this Company by giving to the insured a 20 (twenty) days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. If the reason for the cancellation is nonpayment of premium or fraud, this policy may be canceled by this Company by giving to the insured a 10 (ten) days' written notice of cancellation.

### Mortgagee interests and obligations

If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, the interest in this policy may be canceled by giving to the mortgagee a 10 days' written notice of cancellation.

If the insured fails to render proof of loss the mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of the mortgagee may be added hereto by agreement in writing.

### Pro rata liability

This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

### Requirements in case loss occurs

The insured shall give written notice to this Company of any loss without unnecessary delay, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days after the loss, unless the time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each

Page 3

Policy Number: 9 04 810671 07/21    Your Agent:    Cornel V Jacks (415) 665-7701
For Premium Period Beginning: July 21, 2004

item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required and obtainable, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

The insured, as often as may be reasonably required and subject to the provisions of Section 2071.1, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examinations all books of account, bills, invoices, and other vouchers, or certified copies thereof if the originals be lost, at any reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made. The insurer shall inform the insured that tax returns are privileged against disclosure under applicable law but may be necessary to process or determine the claim.

The insurer shall notify every claimant that they may obtain, upon request, copies of claim-related documents. For purposes of this section, "claim-related documents" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs. However, attorney work product and attorney-client privileged documents, and documents that indicate fraud by the insured or that contain medically privileged information, are excluded from the documents an insurer is required to provide pursuant to this section to a claimant. Within 15 calendar days after receiving a request from an insured for claim-related documents, the insurer shall provide the insured with copies of all claim-related documents, except those excluded by this section. Nothing in this section shall be construed to affect existing litigation discovery rights.

### Appraisal

In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this Company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this Company mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this Company but shall not be compelled.

### Adjusters

Page 4



**Allstate Insurance Company**

Policy Number: 9 04 810671 07/21     Your Agent:    Cornel V Jacks  (415) 665-7701
For Premium Period Beginning:  July 21, 2004

If, within a six-month period, the Company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

### Company's options

It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required.

### Abandonment

There can be no abandonment to this Company of any property.

### When loss payable

The amount of loss for which this Company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this company of an award as herein provided.

### Suit

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.

### Subrogation

This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

# Allstate
# Deluxe
# Homeowners
# Policy

Allstate Insurance Company
Home Office:
Northbrook, IL 60062
AP2

**Allstate**
You're in good hands.





1

*Table of Contents*

### General

3 Definitions Used In This Policy
5 Insuring Agreement
5 Agreements We Make With You
5 Conformity To State Statutes
5 Coverage Changes
5 Policy Transfer
5 Continued Coverage After Your Death
6 Cancellation
6 Concealment Or Fraud

### Section I — Your Property

**Coverage A
Dwelling Protection**

7 Property We Cover Under Coverage A
7 Property We Do Not Cover Under Coverage A

**Coverage B
Other Structures Protection**

7 Property We Cover Under Coverage B
7 Property We Do Not Cover Under Coverage B
7 Losses We Cover Under Coverages A and B
8 Losses We Do Not Cover Under Coverages A and B

**Coverage C
Personal Property Protection**

11 Property We Cover Under Coverage C
11 Limitations On Certain Personal Property
12 Property We Do Not Cover Under Coverage C
13 Losses We Cover Under Coverage C
14 Losses We Do Not Cover Under Coverage C

### Additional Protection

16 Additional Living Expense
17 Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money
17 Debris Removal
18 Emergency Removal Of Property
18 Fire Department Charges
18 Temporary Repairs After A Loss
18 Trees, Shrubs, Plants and Lawns
18 Temperature Change
18 Power Interruption
19 Arson reward
19 Collapse
19 Land

### Section I Conditions

20 Deductible
20 Insurable Interest and Our Liability
20 What You Must Do After A Loss
21 Our Settlement Options
21 How We Pay For A Loss
23 Our Settlement Of Loss
23 Appraisal
24 Abandoned Property
24 Permission Granted To You
24 Our Rights To Recover Payment
24 Our Rights To Obtain Salvage
24 Suit Against Us
25 Loss To A Pair Or Set
25 Glass Replacement
25 No Benefit To Bailee
25 Other Insurance
25 Property Insurance Adjustment
26 Mortgagee



*Table of Contents (Continued)*

## Section II — Family Liability and Guest Medical Protection

### Coverage X
### Family Liability Protection

27  Losses We Cover Under Coverage X
27  Losses We Do Not Cover Under Coverage X

### Coverage Y
### Guest Medical Protection

29  Losses We Cover Under Coverage Y
29  Losses We Do Not Cover Under Coverage Y

### Additional Protection

32  Claim Expenses
32  Emergency First Aid
32  Damage To Property Of Others

### Section II Conditions

33  What You Must Do After An Accidental Loss
33  What An Injured Person Must Do —
    Coverage Y Guest Medical Protection
33  Our Payment of Loss — Coverage Y
    Guest Medical Protection
33  Our Limits Of liability
34  Bankruptcy
34  Our Rights To Recover Payment —
    Coverage X Family Liability Protection
34  Suit Against Us
34  Other Insurance — Coverage X — Family
    Liability Protection

## Section III — Optional Protection

### Optional Coverages
### You May Buy

34  Coverage BC
    Building Codes
34  Coverage BP
    Increased Coverage On Business Property
35  Coverage DP
    Increased Coverage On Electronic
    Data Processing Equipment
35  Coverage F
    Fire Department Charges
35  Coverage G
    Loss Assessments
36  Coverage J
    Extended Coverage On Jewelry, Watches
    and Furs
36  Coverage K
    Incidental Office, Private School Or Studio
37  Coverage LR
    Lock Replacement
37  Coverage M
    Increased Coverage On Money
37  Coverage P
    Business Pursuits
38  Coverage S
    Increased Coverage On Securities
38  Coverage SD
    Satellite Dish Antennas
38  Coverage SE
    Cellular Communication Systems
38  Coverage ST
    Increased Coverage On Theft Of Silverware

000210



*Allstate Insurance Company*
*The Company Named in the Policy Declarations*
*A Stock Company — Home Office: Northbrook, Illinois 60062*

---

## Definitions Used In This Policy

1. **"You"** or **"your"** — means the person named on the Policy Declarations as the insured and that person's resident spouse.

2. **"Allstate," "we," "us,"** or **"our"** — means the company named on the Policy Declarations.

3. **"Insured person(s)"** — means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any dependent person in **your** care.

   Under **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection**, **"insured person"** also means:
   c) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. We do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

4. **"Bodily injury"** — means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:

   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

   Under **Coverage Y — Guest Medical Protection**, **bodily injury** means physical harm to the body, including sickness or disease, except that **bodily injury** does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome(AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

5. **"Building structure"** — means a structure with walls and a roof.

6. **"Business"** — means:
   a) any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

**4**

However, the mutual exchange of home day care services is not considered a **business**;

b)    any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:

   1)    it is rented occasionally for residential purposes;

   2)    a portion is rented to not more than two roomers or boarders; or

   3)    a portion is rented as a private garage.

7.    "**Residence premises**" — means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

8.    "**Insured premises**" — means:

   a)    the **residence premises**; and

   b)    under Section II only:

     1)    the part of any other premises, other structures and grounds used by **you** as a residence.  This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;

     2)    any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;

     3)    cemetery plots or burial vaults owned by an **insured person**;

     4)    vacant land, other than farmland, owned by or rented to an **insured person**;

     5)    land owned by or rented to an **insured person** where a one, two, three or four family dwelling is being built as that person's residence;

     6)    any premises used by an **insured person** in connection with the **residence premises**;

     7)    any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

9.    "Occurrence" — means an accident, including continuous or repeated exposure to substantially the same  general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

10.    "**Property damage**" — means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

11.    "**Residence employee**" — means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**.  This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

12.    "**Dwelling**" — means a one, two, three or four family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.



## Insuring Agreement

In reliance on the information **you** have given **us**, Allstate agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Agreements We Make With You

We make the following agreements with **you**:

## Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

## Coverage Changes

When **Allstate** broadens coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, we may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

## Policy Transfer

**You** may not transfer this policy to another person without **our** written consent.

## Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the premium period for:
1) **your** legal representative while acting as such, but only with respect to the **residence**

060213

6

premises and property covered under this policy on the date of **your** death.

2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Cancellation

**Your** Right to Cancel:
You may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
4) there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the premium period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## Section I — Your Property

### Coverage A
### Dwelling Protection

**Property We Cover Under Coverage A:**

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

**Property We Do Not Cover Under Coverage A:**

1. Any structure including fences or other property covered under **Coverage B — Other Structures Protection**.

2. Land, except as specifically provided in **Section I — Additional Protection** under item 12, "Land."

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

### Coverage B
### Other Structures Protection

**Property We Cover Under Coverage B:**

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures attached to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with structures other than **your dwelling**.

4. Wall-to-wall carpeting fastened to other **building structures**.

**Property We Do Not Cover Under Coverage B:**

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Coverage A — Dwelling Protection**.

3. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

4. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling**.

5. Satellite dish antennas and their systems, whether or not attached to **building** structures.

**Losses We Cover Under Coverages A and B:**

We will cover sudden and accidental direct physical loss to property described in **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection** except as limited or excluded in this policy.

000215

8

**Losses We Do Not Cover Under Coverages A and B:**

We do not cover loss to the property described in **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection** consisting of or caused by:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth.

This exclusion applies whether or not the earth movement is combined with water.

We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**.

   We do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

000216



This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

**We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

1. War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

2. Collapse, except as specifically provided in **Section I — Additional Protection** under item 11, "Collapse."

3. Soil conditions, including but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

4. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

In addition, **we** do not cover loss consisting of or caused by any of the following:

5. a)  wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;

b)  mechanical breakdown;

c)  growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

d)  rust or other corrosion, mold, wet or dry rot;

e)  contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;

f)  smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;

g)  settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

h)  insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds; or

i)  seizure by government authority.

If any of (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling**

10

necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    a) maintain heat in the **building structure**; or
    b) shut off the water supply and drain the system and appliances.

17. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
    a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
    b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

20. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

    of property whether on or off the **residence premises** by any person or organization.

23. We do not cover loss to covered property described in Coverage A — Dwelling Protection or Coverage B — Other Structures Protection when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 22 above.

000215



## Coverage C
## Personal Property Protection

**Property We Cover Under Coverage C:**

Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Coverage C — Personal Property Protection**. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

**Limitations On Certain Personal Property:**

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C — Personal Property Protection**. The total amount of coverage for each group in any one loss is as follows:

1. $ 200 - Money, bullion, bank notes, coins and other numismatic property.

2. $ 200 - Property used or intended for use in a **business** while the property is away

from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $ 1,000 - Property used or intended for use in **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $ 1,000 - Trading cards, subject to a maximum amount of $250 per card.

5. $ 1,000 - Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, and stamps, including philatelic property.

6. $ 1,000 - Manuscripts, including documents stored on electronic media.

7. $ 1,000 - Watercraft, including their attached or unattached trailers, furnishings, equipment, parts and motors.

8. $ 1,000 - Trailers not used with watercraft.

9. $ 1,000 - Theft of jewelry, watches, precious and semi-precious stones, gold other

000213

**12**

than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value.

10. $ 1,000 - Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $ 2,000 - Theft of firearms.

12. $ 2,500 - Theft of silverware, pewterware and goldware.

13. $5,000 - Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:
    a) the retail value of the media, if pre-programmed; or
    b) the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. $10,000 - Theft of rugs, including, but not limited to any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

*Property We Do Not Cover Under Coverage C:*

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders, tenants not related to an **insured person.**

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8. Satellite dish antennas and their systems.

**Losses We Cover Under Coverage C:**

We will cover sudden and accidental direct physical loss to the property described in **Coverage C — Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

   **We do not cover:**

   a)  loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;

   b)  loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises.**

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

   **We do not cover loss caused by smoke from**

the manufacturing of controlled substances agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   **We do not cover vandalism or malicious mischief if your dwelling** has been vacant unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction in not considered vacant or unoccupied.

9. Falling objects.

   **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure.**

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

**14**

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

We do not cover loss at the **residence premises** under perils (12), (13), and (14) caused by or resulting from freezing while the **building structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:
a) maintain heat in the **building structure**; or
b) shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

We do not cover:
a) theft or attempted theft committed by an **insured person**;

b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;
e) theft from that part of the **residence premises** rented by **you** to other than an **insured person.**

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

*Losses We Do Not Cover Under Coverage C:*
We do not cover loss to the property described in **Coverage C — Personal Property Protection** caused by or consisting of:
1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface



water which is drained from a foundation area of a structure.

Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**.

We do cover sudden and accidental direct physical loss to covered property caused by

actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take a reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

16

*Additional Protection*

12. War or warlike acts, including, but not limited to insurrection, rebellion or revolution.

13. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

14. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance:

    of property whether on or off the **residence premises** by any person or organization.

15. **We** do not cover loss to covered property described in **Coverage C — Personal Property Protection** when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 14 above.

1. **Additional Living Expense**
   a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your** **residence premises** uninhabitable.

   Payment for covered additional living expense will be limited to the least of the following:
   1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
   2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
   3) 12 months.

   b) **We** will pay **your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover makes the part of the **residence premises** **you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.

   c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against.

   These periods of time are not limited by the termination of this policy.



We do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

**Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**
We will pay for loss:
a) that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person**;
b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

**Our** maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

We do not cover:
a) loss arising from any **business** of an **insured person**;
b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
c) loss arising out of dishonesty of an **insured person**.

When loss is discovered, the **insured person** must give **us** immediate written notice. If the

loss involves a credit card, charge plate or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

We will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

We will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2(a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

We have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2(b) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3. **Debris Removal**
We will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered

**18**

property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of its removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
   **We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
   **We** will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Coverage A— Dwelling Protection** for loss to trees, shrubs, plants

and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A — Dwelling Protection**.

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

8. **Temperature Change**
   **We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
   **We** will pay for loss to the contents of freezers



and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises.** If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

**Arson Reward**
We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under Section I of this policy. The $5,000 limit applies regardless of the number of persons providing information.

**Collapse**
We will cover:
a) the entire collapse of a covered **building structure;**
b) the entire collapse of part of a covered **building structure;** and
c) direct physical loss to covered property caused by (a) or (b) above.

For coverage to apply, the collapse of a **building structure** specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss **we** cover under Section I, **Coverage C — Personal Property Protection;**
b) hidden decay of the **building structure;**

c) hidden damage to the **building structure** caused by insects or vermin;
d) weight of persons, animals, equipment or contents;
e) weight of rain or snow which collects on a roof;
f) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

12. **Land**
If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The Section I — Losses We Do Not Cover Under Coverages A and B reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

(20)

*Section I Conditions*

---

1. **Deductible**
   We will pay when a covered loss exceeds the deductible shown on the Policy Declarations. We will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**
   In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**
   In the event of a loss to any property that may be covered by this policy, **you** must:
   a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.
   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
   d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
   e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
   f) as often as **we** reasonably require:
      1) show **us** the damaged property.
      2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
      3) produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and
   g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
      1) the date, time, location and cause of loss;
      2) the interest **insured persons** and others have in the property, including any encumbrances;
      3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
      4) any other insurance that may cover the loss;
      5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
      6) at **our** request, the specifications of any damaged **building structure** or other structure;
      7) evidence supporting any claim under the Credit Card, Bank Fund Transfer



Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

**Our Settlement Options**
In the event of a covered loss, **we** have the option to:
a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

**How We Pay For A Loss**
Under **Coverage A — Dwelling Protection, Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
   1) the whole amount of loss for property covered under **Coverage A — Dwelling Protection and Coverage B — Other Structures Protection**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building

Structure Reimbursement provis[ion,] or;
   2) the whole amount of loss for prope[rty] covered under **Coverage C — Personal Property Protection** without deduction for depreciation[, is] less than $2,500 and if **your** Policy Declarations shows that the Person[al] Property Reimbursement provisio[n] applies, and the property is not excluded from the Personal Propert[y] Reimbursement provision.

b) Actual Cash Value. If **you** do not repa[ir] or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means the[re] may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declaration[s] for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involv[ed] in the loss.

**You** may make claim for additional payment as described in paragraph "c", a[nd] paragraph "d" below if applicable, if **you** repair or replace the damaged, destroyed [or] stolen covered property within 180 days o[f] the actual cash value payment.

c) Building Structure Reimbursement. Under **Coverage A — Dwelling Protection** and **Coverage B — Other**

(22)

Structures Protection, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the **building structure**(s) for equivalent construction for similar use on the same premises;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure**(s) with equivalent construction for similar use on the same **residence premises**; or
3) the limit of liability applicable to the **building structure**(s) as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure**(s) at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under **Coverage C — Personal Property Protection;**
2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure;**
3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure;** or
4) land.

Payment under "a", "b", or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction,

reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C — Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for **Coverage C —Personal Property Protection,** or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection,** except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statua and similar articles which, by their inherent nature, cannot be replaced.
3) articles whose age or history contribute substantially to their valu This includes, but is not limited to memorabilia, souvenirs and collector items; or
4) property that was obsolete or unusab for the originally intended purpose because of age or condition prior to th loss.

6. **Our Settlement Of Loss**
   **We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 60 days after the amour of loss is finally determined. This amount may be determined by an agreement between **you** and **us,** an appraisal award or a court judgment.

7. **Appraisal**
   If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the

000231

**24**

demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
We are not obligated to accept any property or responsibility for any property abandoned by an **insured person.**

9. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.

b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
We have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

We will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us.**

12. **Suit Against Us**
No suit or action may be brought against **us** unless there has been full compliance with all

000232

**25**

policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

3. **Loss To A Pair Or Set**
   If there is a covered loss to a pair or set, **we** may:
   a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
   b) pay the difference between the actual cash value of the pair or set before and after the loss.

4. **Glass Replacement**
   Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

5. **No Benefit To Bailee**
   This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

6. **Other Insurance**
   If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

7. **Property Insurance Adjustment**
   When the Policy Declarations indicates that the Property Insurance Adjustment condition applies:

The limit of liability shown on the Policy Declarations for **Coverage A — Dwelling Protection** will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

The limit of liability for **Coverage A — Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for **Coverage A — Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection** in accordance with the **Allstate** manual of Rules and Rates.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

**Allstate** has the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. This applies only if the change

000253

**26**

or withdrawal applies to all similar policies issued by **Allstate** in **your** state.

18. **Mortgagee**

A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:

a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and

b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:

a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;

b) pay upon demand any premium due if an **insured person** fails to do so;

c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

d) give **us** the mortgagee's right of recovery against any party liable for loss; and

e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

*Section II — Family Liability and Guest Medical Protection*

*Coverage X*
*Family Liability Protection*

*Losses We Cover Under Coverage X:*

Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, we will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. We are not obligated to pay any claim or judgment after we have exhausted **our** limit of liability.

*Losses We Do Not Cover Under Coverage X:*

1. We do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a)  such **insured person** lacks the mental capacity to govern his or her conduct;
   b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
   c)  such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually

charged with, or convicted of a crime.

2. We do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. We do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a)  a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b)  any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c)  a motorized wheel chair;
   d)  a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

28

e) a golf cart owned by an **insured person** when used for golfing purposes;
f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
g) lawn and garden implements under 40 horsepower;
h) **bodily injury to a residence employee.**

6. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
a) has inboard or inboard-outboard motor power of more than 50 horsepower;
b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury to a residence employee.**

7. We do not cover **bodily injury** or **property damage** arising out of:
a) the negligent supervision by an **insured person** of any person; or
b) any liability statutorily imposed on any **insured person**

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. We do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. We do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. We do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

**29**

12. We do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

   We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. We do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

14. We do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

15. We do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. We do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

*Coverage Y*
*Guest Medical Protection*

*Losses We Cover Under Coverage Y:*
Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

*Losses We Do Not Cover Under Coverage Y:*
1. We do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;

30

b)  such **bodily injury** is of a different kind or degree than intended or reasonably expected; or

c)  such **bodily injury** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2.  We do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3.  We do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4.  We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5.  We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

a)  a motor vehicle in dead storage or used exclusively on an **insured premises**;

b)  any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

c)  a motorized wheel chair;

d)  a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

e)  a golf cart owned by an **insured person** when used for golfing purposes;

f)  a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g)  lawn or garden implements under 40 horsepower;

h)  **bodily injury** to a **residence employee**.

6.  We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

a)  has inboard or inboard-outboard motor power of more than 50 horsepower;

b)  is a sailing vessel 26 feet or more in length;

c)  is powered by one or more outboard motors with more than 25 total horsepower;

d)  is designated as an airboat, air cushion, or similar type of watercraft; or

e)  is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

**31**

7. We do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. We do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

10. We do not cover **bodily injury** arising out of the past or present business activities of an **insured person**.

We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

11. We do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. We do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

13. We do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

**32**

*Additional Protection*

We will pay, in addition to the limits of liability:
1. **Claim Expense**
   We will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our limits of liability**;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   We will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $500 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

**We** will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present **business** activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

000240

**33**

*Section II Conditions*

1. **What You Must Do After An Accidental Loss**
   In the event of **bodily injury** or **property damage**, **you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an insured person will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.
   d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

   Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do — Coverage Y — Guest Medical Protection**
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give **us** written proof of the loss. If we request, this must be done under oath.
   b) Give **us** written authorization to obtain copies of all medical records and reports.
   c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss — Coverage Y — Guest Medical Protection**
   **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
   Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X — Family Liability Protection** for damages resulting from one occurrence will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence.

   **Our** total liability under **Coverage Y — Guest Medical Protection** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

**34**

*Section III — Optional Protection*

5. **Bankruptcy**
   We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person.**

6. **Our Rights To Recover Payment — Coverage X — Family Liability Protection**
   When we pay any loss, an **insured person's** right to recover from anyone else becomes ours up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Suit Against Us**
   a) No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against **us** under **Coverage X — Family Liability Protection** until the obligation of an **insured person** to pay is finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person, and **us.**
   c) No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person.**

8. **Other Insurance — Coverage X — Family Liability Protection**
   This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BC**
   **Building Codes**
   We will pay up to 10% of the amount of insurance on the Policy Declarations under **Coverage A — Dwelling Protection** to comply with local building codes after covered loss to **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling.**

2. **Coverage BP**
   **Increased Coverage On Business Property**
   The $1,000 limitation on **business** property located on the **residence premises**, under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises.**



3. **Coverage DP**
   **Increased Coverage On Electronic Data Processing Equipment**
   The $5,000 limitation on electronic data processing equipment under **Coverage C — Personal Property Protection**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

4. **Coverage F**
   **Fire Department Charges**
   The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

5. **Coverage G**
   **Loss Assessments**
   If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

   We will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:

a) sudden and accidental direct physical los to the property held in common by all building owners caused by a loss **we** cove under **Section I** of this policy; or

b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

Allstate will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or property damage exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

36

6. **Coverage J**
   **Extended Coverage On Jewelry, Watches and Furs**
   **Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
   a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
   b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Coverage C — Personal Property Protection.** However, in no event will coverage be less than would have applied in the absence of **Coverage J.**

We do not cover loss caused by or consisting of:
a) intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   1) may be reasonably expected to result from such acts; or
   2) is the intended result of such acts.
b) wear and tear, gradual deterioration, inherent vice, insects or vermin;
c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke.

We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
d) war or warlike acts, including, but not limited to insurrection, rebellion or revolution.
e) failure by any insured person to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

Any deductible shown on the Policy Declarations applicable to **Coverage C — Personal Property Protection**, also applies to a loss under this coverage.

7. **Coverage K**
   **Incidental Office, Private School Or Studio**
   a) The $200 and $1,000 limits applying to property used or intended for use in a **business** under **Coverage C — Personal Property Protection** do not apply to equipment, supplies and furnishings used in a described office, private school or studio at **your residence premises.** This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises.** The second limit applies to property while away from the **residence premises.** These limits are not in addition to **Coverage C — Personal Property Protection,**

**37**

Limitations On Certain Personal Property on property used or intended for use in a **business**. The increased coverage does not include property held for sample, sale or delivery after sale.

b) **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover a described office, private school or studio occupied by an **insured person**. The occupancy of the described property shall not be considered a **business**.

We do not cover **bodily injury** to:
a) any employee other than a **residence employee**; or
b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.

8. **Coverage LR**
**Lock Replacement**
**Coverage A — Dwelling Protection** is extended to include reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. Coverage is provided when a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $250.

9. **Coverage M**
**Increased Coverage On Money**
The $200 limitation on money, bullion, bank notes, coins and other numismatic property

under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

10. **Coverage P**
**Business Pursuits**
**Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover specified **business** pursuits of an insured person.

We do not cover:
a) **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person**. This also means a partnership or joint venture of which an **insured person** is a partner or member;
b) **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;
c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or

000245

**38**

watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or

e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

11. Coverage S
**Increased Coverage On Securities**
The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, or stamps, including philatelic property, covered under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations.

12. **Coverage SD**
**Satellite Dish Antennas**
**Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C — Personal Property Protection**.

The amount of coverage is shown on the Policy Declarations.

13. **Coverage SE**
**Portable Cellular Communication Systems**
**Coverage C — Personal Property Protection** is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft. Coverage applies whether or not the portable cellular communication system is used in a **business.**

The amount of coverage is shown on the Policy Declarations.

14. **Coverage ST**
**Increased Coverage On Theft Of Silverware**
The $2,500 limitation on theft of silverware, pewterware and goldware under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

000246